L. J. E. Vázquez Prada, Plaintiff and Appellant, *v.* José Antonio Rocco y Cesarino, Defendant and Appellee.

No. 6185.  Argued March 16, 1934.—Decided June 22, 1934.

*L. J. E. Vázquez Prada* in his own right.  *Monserrat & Monserrat* for appellee.

Mr. Justice Córdova Dávila delivered the opinion of the Court.

On August 15, 1910, Luisa López Laborde, in her own name and representing her minor children, and with judicial authorization, executed a mortgage in favor of Antonio Rocco Cesarino on a house described in the complaint, to secure a loan of $2,000 made by said Rocco, and agreed to pay on August 15, 1913.  Mrs. López Laborde widow of Dr. Arturo Vázquez Prada, died on July 26, 1918.  As alleged in the complaint, the children and heirs of Mr. Vázquez Prada and Mrs. López Laborde, have assigned all the rights and interests they may have in the estate of their deceased parents in favor of plaintiff Leopoldo José Eulogio Vázquez Prada y López.

The complaint alleges that at the time the mortgage was executed the debtors did not waive their homestead right; that Rocco is the owner of the property mentioned and that he, on May 15, 1921, agreed with plaintiff Leopoldo José Eulogio Vázquez Prada López to pay him the homestead right which the latter has in said house as to the participation of Francisca Luisa López Laborde; amounting to $333.33, agreeing also to pay the sum of $167.67 as interests on the $333.33 of the homestead right; that the defendant agreed to pay paintiff the sum of $500 on February 10, 1930 in payment of the homestead right on said property; that plaintiff has acquired a homestead right by inheritance from his

mother Francisca Luisa López Laborde and by assignments made by his brothers, and that he also acquired said homestead right by an agreement as it appears from a contract entitled ''Extrajudicial Contract for the Payment of Homestead.''

Defendant denies having agreed to pay plaintiff any amount or that he signed any document or contract in connection with the alleged homestead right on the property described in the complaint, and alleges that if there is any document with the signature of defendant, said document is fraudulent.

The allegations of the complaint create some confusion due to the disorder and carelessness with which they are drafted; but from the words used by plaintiff it clearly appears that he bases his claim on a homestead right acquired by inheritance and also on a contract executed with defendant José Antonio Rocco Cesarino.

The first error attributed to the lower court is that said court declares that plaintiff made statements which he in fact did not make. In the statement of facts authorized by the court it is stated that plaintiff declared that on October 1, 1910, a month and a half after the mortgage was executed, the defendant Rocco went to the house of Mrs. Luisa López Laborde to collect the interests which were owing and that on said occasion Rocco told doña Luisa that she had not waived her homestead right and that he desired to make a document to pay it to her.

We have carefully examined the record and there is nothing in them to indicate that plaintiff made these statements, which the lower court comments in the following manner:

''This, according to plaintiff himself, happened on October 1, 1910, a month and a half after the execution of the mortgage, without the same having been foreclosed and without defendant Rocco having reason to believe that the property would belong to him, as the debtors could obtain the amount of the loan and return it to the

creditor on or before the maturity and even in case of foreclosure there might be bidders to cover the entire debt. In spite of the fact that the document was offered in 1910 by Rocco, at the trial an alleged carbon copy of said document was offered in evidence, dated May 15, 1921, eleven years later; in it Rocco agreed to pay plaintiff Vázquez Prada the $500 on February 10, 1930, that is, 9 years after the date of the document, and 19 years after the alleged conversation of October 1, 1910. The document offered in evidence is not signed and oral evidence was offered to prove that the original document was destroyed in a fire which occurred in plaintiff's house. Defendant, of course, denied emphatically the supposed conversation of the year 1910 and he also denied having executed any document by which he agreed to pay any sum.

"As may be seen from the facts stated, this case is as fantastic as the most unbelievable story of the Thousand and One Nights.

"How could it be possible for Rocco to bind himself to pay any amount for the homestead, if on October 1, 1910 the property still belonged to the mortgage debtors and he did not even have reason to believe that the property would be adjudicated to him, as we have mentioned before?"

In the statement of the case prepared by the plaintiff himself and approved by the court, there is not a single atom of proof referring to the statements attributed to plaintiff. Nor is there any testimony of defendant denying the alleged conversation of 1910. Rocco did not testify as a witness. It can not be understood how a court can declare a fact as proved when no evidence of the same was offered and that it be used as basis for the judgment. The statements of the court are so deliberate and its commentaries on the evidence so clear and precise, that we can not explain the conclusions of fact without thinking that there was some irregularity in the preparation of the statement of the case.

However, in spite of the error which according to the record the lower court incurred, we believe that this is a case which due to its nature should be finally decided by this Court.

Plaintiff maintains that he acquired the homestead right by inheritance from his mother. This right was first claimed

when the complaint was filed, when all the children of Mrs. López Laborde were of full age, and after the heirs had sold their equities in the house.

According to section 2 of the Homestead Law, the exemption will continue, although the parents have died, "for the benefit of the children, until the youngest one has reached the age of 21 years."

It is an admitted fact that Mrs. López Laborde died on June 26, 1918. It has been shown that on May 19, 1920, the minors Estela Catalina, Luz and Jaime José Vázquez Prada executed a deed of sale of their interests in the house in favor of plaintiff and it appears therefrom that on said date they were 19, 17 and 16 years of age. The amended complaint appearing in the record was filed on August 10, 1931. Defendant in his brief states, undoubtedly referring to the original complaint, that it was filed on April 9, 1930. It is clear that the said minors had reached majority some years before the claim for homestead was made.

The lower court was very benevolent in treating this case as fantastic and unbelievable. As we have seen, plaintiff based his claim not only on the rights which he claims he acquired by inheritance, but also on a document entitled "Extrajudicial Contract for the Payment of Homestead." In view of this allegation defendant requested from plaintiff, through the court, permission to inspect said document and to make a copy of the same. Plaintiff answered this request by saying that said document was destroyed by a fire which occurred in his house on May 20, 1921. Mr. Vázquez Prada states that defendant received a carbon copy of said contract and that the original was kept by the said Vázquez Prada in the house, which as he had said, was destroyed by a fire. Plaintiff ends by stating that he is taking "the proper steps to obtain a true copy of the extrajudicial contract for the Payment of Homestead and that if he obtains it he will present it at the trial as evidence."

We will transcribe the copy of this queer contract which was later offered in evidence, as the way it is drawn up can give us an idea of its pretended authenticity.

"Extrajudicial Contract for the Payment of Homestead.

"Of the first Part, Mr. Antonio Rocco Cesarino, resident of San Juan, P. R., and of the second part, Mr. L. J. E. Vázquez Prada, resident of Santurce, P. R.; AGREE the following extrajudicial contract, within these clauses: 1st. Mr. José Antonio Rocco Cesarino agrees to pay to Mr. L. J. E. Vázquez Prada the homestead on the house on Sol Street No. 52 in the city of San Juan, P. R., which according to mortgage deed No. 42, executed in San Juan on August 15, 1910, before notary Eugenio Benítez Castaño; Mr. José Antonio Rocco Cesarino agrees to pay the 'Homestead' as to the interest which Mrs. Francisca Luisa López Laborde widow of Dr. Arturo Vázquez Prada has on said house, which is the half plus a third interest, that is, the sum of $333.33. 2d. That in consideration of the delay of 8 years, one month, and ten days, Mr. José Antonio Rocco agrees also to pay to Mr. L. J. E. Vázquez Prada the sum of one hundred and sixty-seven dollars and sixty cents ($167.67), as interest on the $333.33 of the Homestead. 3rd. That the capital and interest make a total of $500 which Mr. Rocco agrees to pay to said L. J. E. Vázquez Prada on February 10, 1930. Mr. José Antonio Rocco and Cesarino and Mr. L. J. E. Vázquez Prada accept all the contents of this contract and sign the present in duplicate this 15th day of May 1921, in Santurce, P. R.

José Antonio Rocco Cesarino
_____

L. J. E. Vázquez Prada
_____

Witness
_____

Witness."

This alleged copy was offered in evidence without plaintiff explaining how he obtained it. The document states that it is signed in duplicate and plaintiff stated that Rocco took with him a carbon copy. The original was kept by Vázquez Prada in his residence. The plaintiff has not proved the existence of any other copy nor does he state where and in

whose possession was the copy he offered in evidence, nor does he explain how he obtained it. If he had the original, what reasons did he have to make a copy? If as a matter of fact he had this copy, why did he keep it outside of the house where he lived and which was destroyed by a fire? It is reasonable to believe that if the original was burned the copies were destroyed also. Plaintiff, according to his own statements, did not know of the existence of this copy, for when he was requested to produce the original he answered that it had been destroyed by a fire and that he was taking steps to obtain a copy of the same. If plaintiff himself had in his possession the original and he was the person who dealt directly with Rocco, why did he have to take steps to obtain a copy of the document, which if it existed, should have been in his possession?

Luisa Vázquez Prada, a sister of plaintiff, testified that Rocco went to her house with a homestead contract for her brother to examine and that she was called to sign as a witness and she did so together with a man named John Conder. When asked why said document was made she answered that Rocco had agreed to pay her mother. It is strange, that Rocco, on or about the year 1921, when we were not familiar with the homestead law, practically ignored up to that time, would go to the house of plaintiff Vázquez Prada with a paper in his hands, by which he agreed to pay plaintiff a certain sum for a homestead right which had not been claimed. The existence of said contract has not been proved satisfactorily.

The lower court did not believe the witnesses Luisa Vázquez Prada and John Conder. The truth is that the evidence of plaintiff does not deserve any credit and that the decision of the lower court was amply justified.

The judgment appealed from must be affirmed.